(152 App. Div. 581.)

**PEOPLE ex rel. GRAVES v. SOHMER, State Comptroller.**

(Supreme Court, Appellate Division, Third Department. September 27, 1912.)

CANALS (§ 6*)—CANAL BOARD—REHEARING.

    Under Canal Law (Consol. Laws 1909, c. 5) § 15, subd. 7, conferring on the Canal Board power to open any adjudication when in their judgment justice may require it and to order a rehearing, the board had power, after altering a canal contractor's contract, ordering a discontinuance of the work, allowing his account, and ordering a warrant on the Comptroller drawn therefor, to rescind the resolution altering the contract and allowing the account, and direct the state engineer and surveyor to furnish a detailed statement with reference to the subject-matter of the contract pending an order on the Comptroller to show cause why he should not be compelled to audit and deliver the warrant.

    [Ed. Note.—For other cases, see Canals, Cent. Dig. § 4; Dec. Dig. § 6.*]

Appeal from Special Term, Albany County.

Mandamus by the People, on the relation of Edward M. Graves, against William Sohmer, as Comptroller of the State of New York. From an order granting the writ, respondent appeals. Reversed, and motion denied.

Argued before SMITH, P. J., and KELLOGG, BETTS, HOUGHTON, and LYON, JJ.

Thomas Carmody, Atty. Gen. (Henry Selden Bacon, Deputy Atty. Gen., of counsel), for appellant.

Kellogg & Rose, of New York City (L. Laflin Kellogg and Alfred C. Pette, both of New York City, of counsel), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SMITH, P. J. The Comptroller appeals from the determination of the Albany Special Term directing a mandamus requiring him to audit the relator's claim, and deliver him a warrant for $50,131.70. The relator had a contract on the canal which he was to perform at a uniform price for digging. A part of the digging was rock excavation, which was more expensive than the dirt excavation. He entered upon the contract in good faith, and performed it faithfully until the state, pursuant to its right so to do as stipulated in the contract altered the contract, and directed discontinuance of part of the work to be done thereunder. This was accomplished by a resolution of the Canal Board passed on the 27th day of December, 1911. After the alteration of the contract and the discontinuance of this work, an account was stated by the relator of the amount of work done under said contract. This account was approved by resolution of the Canal Board upon January 31, 1912. Thereafter, upon the certificate of the engineer that the work was performed, the superintendent of public works issued a warrant upon the Comptroller for the payment of the sum in question, being the amount remaining unpaid upon the account stated by the relator and approved by the Canal Board January 31st. The Comptroller refused to pay the amount of this warrant, and an order thereafter was granted directed to the Comptroller requiring him to show cause why payment of the warrant should not be made. After the order to show cause was granted, and before the hearing, upon March 20, 1912, the Canal Board, pursuant to a request from the Comptroller, assumed to rescind the resolution altering the contract, dated December 27, 1911, and also the resolution approving the account of the relator, dated January 31, 1912, and in that resolution it was provided that the matter be referred to the state engineer and surveyor to furnish to the Canal Board at its next meeting a full and detailed statement with reference to the subject-matter of the contract.

It thus appears that by the order appealed from the Comptroller has been directed to pay the account of a contractor while the alteration of the contract upon which the account was stated and the acceptance and approval of the account stand disapproved by the Canal Board. The only justification for this order would seem to be that the Canal Board was without authority to rescind its resolution altering the contract and approving this account. But such authority must, from the nature of the case, be presumed. There are many contracts which the Canal Board is called upon to approve, which, upon subsequent investigation, prove to be improvident, and it would be a serious embarrassment to the usefulness of the board if power to modify and rescind such approval were held to be wanting. Moreover, by subdivision 7 of section 15 of the Canal Law, the board is given express power to open any adjudication "when in their judgment justice may require it," and to order a rehearing therein.

Without considering, therefore, the rights of the relator as against the state, this court should not issue its writ of mandamus to compel the Comptroller to pay a claim which stands disapproved by the

Canal Board, upon the approval of which board only is the Comptroller given power to make payment.

The order should, therefore, be reversed, without costs, and the motion for a writ of mandamus denied.

Order reversed without costs, and motion for a mandamus denied without costs. All concur, HOUGHTON and BETTS, JJ., in memorandums.

HOUGHTON, J. (concurring). I do not think the Canal Board had the power, in the absence of any mutual mistake or fraud on the part of the relator, to annul the adjustment and settlement which it made with the relator on the alteration and termination of his contract; nor do I think the Comptroller has the right arbitrarily to refuse to pay a claim audited and allowed by the proper state officials. The Canal Board, however, whether having the right to do so or not, assumed to annul its adjustment of the relator's contract, thereby recalling its audit, and in effect directing the Comptroller not to pay. In view of this fact, whether such recall was effectual or not, I do not think this court should issue its mandamus compelling the Comptroller to pay the original audit. Under the peculiar situation presented the more orderly way is for the relator to seek redress through the Board of Claims. It is upon this ground alone that I concur in a reversal of the order.

BETTS, J. (concurring). If the relator had by the mistake of some state officials secured a draft upon the Comptroller for the sum of $50,000 for work which had not been performed or for work for which the relator had been previously paid, I presume no person would seriously claim that upon that fact being discovered and presented to the court mandamus would lie to compel the Comptroller to audit such claim at $50,000 and to issue his warrant upon the State Treasurer for the payment therefor simply because relator had possession of a warrant for that amount; yet much the same condition exists here.

It was ascertained by the state Canal Board that an apparent error had been made, and an exorbitant amount, considering the nature and extent of the work performed by the contractor, had been awarded to the contractor, and a draft presented to the Comptroller for audit in accordance with such original mistaken idea as to the character and extent of the work performed under the contract. The Canal Board, learning that an error had been committed, promptly rescinded its resolution approving of such amount prior to the Comptroller auditing the claim or the court issuing its peremptory writ of mandamus.

The authority for issuing this draft on the Comptroller was withdrawn before the court acted, hence the relator was in the position of presenting to the court a dishonored draft upon the Comptroller and the Comptroller refusing to audit such draft and to issue his warrant therefor. I think this was not only properly refused, but the only kind of action that the Comptroller could take under the circumstances.

By statute claims of the kind here presented are to be paid by the Treasurer of the state "on the warrant of the Comptroller, after due audit by him, upon the presentation of the draft of the superintendent of public works to the order of the contractor." Section 13, c. 147, Laws of 1903, as amended by chapter 365, Laws of 1906. The audit of the Comptroller is required. Mandamus will not lie to compel audit in any particular way or for any particular amount by the Comptroller of the state. People ex rel. Grannis v. Roberts, 163 N. Y. 70, 57 N. E. 98.

It follows that the order appealed from should be reversed, with costs and disbursements to the Comptroller.